PIKEVILLE FUEL CO. et al. v. MARSH.—232
S. W. (2d) 789.

Eastern Section. November 10, 1948.

Petition for Certiorari denied by Supreme Court, May 5, 1949.

84

Sizer & Cameron, of Chattanooga, and Tom Greer, Jr., of Dunlap, for plaintiffs in error.

Lewis S. Pope, of Nashville, for defendant in error.

GOODMAN, J. This is an appeal in the nature of a writ of error from a judgment in favor of Lee Marsh and against Pikeville Fuel Company and Logan Holland in the amount of $10,000.00. The parties will be hereinafter referred to in accord with their respective capacities in the court below.

The suit grows out of a bus accident occurring on March 29, 1946, within but near the corporate limits of Pikeville, Tennessee, wherein the plaintiff, Lee Marsh, received painful and serious injuries, including a fracture or dislocated sacro-iliac joint and fractures of the pubic bones, resulting in a permanent physical impairment. No question is made as to the amount of the verdict so that

it is unnecessary to further consider the extent of the injuries received.

There is little or no dispute concerning the manner in which the accident occurred. It appears from the evidence that the defendant, Pikeville Fuel Company, owned and operated a bus to and from Pikeville and vicinity and the mines operated by it some seventeen miles distant from Pikeville. Thus there was provided transportation to a number of its employees, for which service no charge was made. The plaintiff, Lee Marsh, was one third owner of the property on which the mine operated by the Pikeville Fuel Company was located. He was a brother-in-law of the defendant, Merriman, who also owned a one-third interest in the mine property and was an officer in the defendant corporation. As foreman, in charge of the mines, plaintiff had full authority over, and the right to hire and discharge the employees; as well as control over the operation of the transportation bus, which he kept at his own home, and used on occasion for his own purposes. Sometimes he drove the bus to and from the mines, but the defendant Holland drove it most of the time. On the occasion in question, the bus, driven and operated by. the defendant, Holland, approached and entered the city limits of Pikeville. The plaintiff and one W. N. Girdley were seated with Holland in the cab of the bus. In the rear, or the main body of the bus which was not connected by passageway or door with the cab, were seated Wade Smith, Virgil Gill and Junior Blaylock. Other employees had been riding in the rear of the bus but had gotten out prior to its arrival in Pikeville. At a point described as just in front of Sam Mc-Reynolds' residence in Pikeville, a car was parked on the same side of the road the bus was travelling on its approach into Pikeville. As the bus neared this car, another

car was seen coming from the opposite direction. At first, Holland, then driving at a speed described as "fifty miles an hour or better", appeared to speed up in an attempt to pass the parked car, but, apparently believing that he could not execute this maneuver safely, he applied the brakes and slowed down. In so doing, the right wheels of the bus hit the ditch on the side of the road. The bus travelled about seventy feet in the ditch, then took a quick turn to the left. The driver being unable to straighten it back up, the bus turned over in the middle of the highway. It turned over on the right side, which was the side on which the plaintiff was seated, and Gird-ley and Holland fell on him.

The plaintiff, in his declaration, in substance, charged that the defendant Pikeville Fuel Company, in accordance with an agreement with the plaintiff and others working in its mines, granted transportation to and from the mines each day. Upon the occasion in question, its employee, the defendant, Logan Holland was driving and operating said bus, pursuant to said agreement. He charged that the accident occurred substantially as above stated and that on said occasion the defendant Holland was driving negligently and carelessly and in such manner as to lose control of the bus and cause it to turn over. The defendants pleaded the general issue to the declaration. By amendment to the declaration the plaintiff alleged, in substance, that the plaintiff and other employees of the Pikeville Fuel Company ". . . were invited or permitted by the two said defendants to ride in said bus to their places of work at the mines in the morning and from their places of work, after the day's work had been finished, to or near their homes in the evening. There was no contract nor was it a part of the employment contract between plaintiff and the defend-

ants, Pikeville Fuel Company and/or J. W. Merriman, that this transportation to and from the mines to be furnished with or without compensation, that he was simply permitted by common consent to ride in the bus as hereinbefore indicated.'' Pleading to the amended declaration, the defendants, J. W. Merriman, Betty Jean Merriman and Pikeville Fuel Company, said that the amended declaration ''. . . is a separate, distinct and different cause of action from the cause of action set forth in the original declaration in this case, and that the things and matters alleged in said amended declaration occurred more than one year before the filing of said amended declaration, and are therefore barred by the one year Statute of Limitations of Tennessee, as provided in such cases''. The defendant, Logan Holland, filed a similar plea to the amended declaration.

At the conclusion of all proof on behalf of the plaintiff, the suit was dismissed as to the defendants, Betty Jean Merriman and J. W. Merriman, individually. Also, at this juncture, the defendant Pikeville Fuel Company moved for a directed verdict, which motion was overruled. It, thereupon, announced that it would stand on the motion. It would offer no evidence. The defendant, Logan Holland, having had a similar motion overruled, thereupon took the stand in his own behalf and testified. At the conclusion of this defendant's testimony, the motion for a directed verdict in his behalf was renewed and was, by the court, overruled.

The plaintiff in error, Pikeville Fuel Company, here assigns only one error, ''The court erred in failing and refusing to direct a verdict in favor of the defendant Pikeville Fuel Company'', which is supported by the various grounds which shall hereinafter be more par-

ticularly discussed. A similar assignment is filed by the plaintiff in error Logan Holland.

A motion to strike the assignment of error of Pikeville Fuel Company is made on behalf of Lee Marsh, the defendant-in-error. This motion is predicated upon the failure of said defendant to renew its motion for a directed verdict at the conclusion of all proof.

It is a well settled principle of law in this State that a defendant must renew his motion for a directed verdict at the conclusion of all evidence or his failure so to do constitutes a waiver. Gerber Co. v. Smith, 150 Tenn. 255, 263 S. W. 974; Nashville Ry. & Light Co. v. Henderson, 118 Tenn. 284, 99 S. W. 700. The rationale of the rule, as quoted in the latter case from Bogk v. Gassert, 149 U. S. 17, 13 S. Ct. 738, 37 L. Ed. 631, is stated thus: ''A defendant has an undoubted right to stand upon his motion for a non suit, and have his writ of error if it be refused; but he has no right to insist upon his exception after having subsequently put in his testimony and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony. It not infrequently happens that the defendant himself by his own evidence supplies the missing link, and, if not, he may move to take the case from the jury upon the conclusion of the entire testimony.'' In City of Knoxville v. Hargis, 184 Tenn. 262, 198 S. W. (2d) 555, 558, the court said: ''The statement of the Trial Judge, before submitting the case to the jury, that the City relies on its motion made at the end of the plaintiff's proof, put the City in exactly the same position it would have been in had it renewed its motion at the end of all the evidence, since it had introduced no evidence to effect a waiver of the former motion, and the evidence introduced by the codefendant did not touch the question of the

City's liability." Now in the instant case, no statement was made at the conclusion of all evidence, either by the court or by the defendant, Pikeville Fuel Company, but it is important to note that, prior to the introduction of Logan Holland's testimony, the following colloquy transpired:

"Mr. Sizer: Your Honor, as far as the Pikeville Fuel Company is concerned, we stand on our motion.

"The Court: All right.

"Mr. Sizer: I understand, Your Honor, any other evidence offered is not binding on us, we are not offering any.

"Mr. Pope: What is it you said?

"Mr. Sizer: I say, the Pikeville Fuel Company is offering no evidence. We stand on our motion and any other evidence is on behalf of the plaintiff.

"Mr. Pope: That is all right, thank you."

■■ Now, as indicated by the court in City of Knoxville v. Hargis, supra, where evidence of a codefendant touches upon the question of another defendant's liability, which, in fact, it did in the present case, the court is entitled to consider it along with all other evidence. This is necessarily so, for otherwise, one defendant could rest his own case and get the benefit of the other's proof without any of the hazards attendant thereto. But this is not to say that a defendant is invariably bound by his codefendant's testimony. This would be equally unfair. In the instant case, the defendant Pikeville Fuel Company expressly disavowed any responsibility for such further evidence as might be adduced, as well as any implications, favorable or unfavorable which might derive therefrom. We think that it was clearly understood by both the Court and Counsel for the plaintiff, that this defendant intended that its motion embrace the entire proceedings, as effectively as if renewed at the conclusion of all proof.

It, therefore, cannot be well maintained that defendant's motion was waived or that it seeks to put the court in error for refusal to sustain its motion, not made at the proper time.

We are of the opinion that under the circumstances the motion to strike is not well taken, and the same will be accordingly overruled.

The defendants insist that in as much as the Pikeville Fuel Company employed more than five employees it was conclusively presumed to be operating under the Workmen's Compensation Law of Tennessee, and there being no pleading or proof that it had failed to comply with the Act, a common law action against it was not authorized. Neither the plaintiff nor the defendants seek to rely upon or avoid the provisions of the Act in their pleadings.

In Hammett v. Vogue, Inc., 179 Tenn. 284, 289, 165 S. W. (2d) 577, 579, the court following a most thorough discussion of authorities held, "Where the employee sues the employer, invoking common-law liability, we hold that the exception with respect to such liability can never be regarded as an element . . . and must be specially pleaded". Citing, Warren v. American Car & Foundry Co., 327 Mo. 755, 764, 38 S. W. (2d) 718. And further said, "Where a common-law right of action is brought, the defendant, if he claims the benefits of the Compensation Act, should plead it as notice to his adversary as well as the court who is asked to decide the question. He should not be permitted to interpose his common-law defenses, in the hope of defeating the employee entirely, and, having failed, try to avail himself of benefits under the act." This case apparently overrules Copeland v. Cherry et al., 20 Tenn. App. 122, 95 S. W. (2d) 1275, relied upon by appellants, wherein the

Court of Appeals, impliedly at least, held it to be unnecessary to specifically plead the statute in defense to a common law action. But even if the latter rule were to prevail, we think the defendant failed to carry the burden of proving that it was operating under the Act. Although there be a presumption in absence of evidence to the contrary, that an employer has complied with the Act, as held in Copeland v. Cherry, supra, there is some proof in the record that the defendant had posted notices of its election not to accept the provisions of the Act. This is considered sufficient to shift the burden to the defendant. Particularly is this true in light of the burden already cast upon the defendant to plead and prove its defense under the statute. In Kilgore v. Ake Coal Co., 182 Tenn. 479, 187 S. W. (2d) 781, the court held that, in order to avoid liability to pay compensation, an employer must show not only posted notices that it elected not to operate under the statute but that it gave written notice to this effect to the proper department. We think the converse would be true. Even though the proof should show that notices were posted, the employer might still obtain the benefits of the act in defense to a common law action by appropriate plea and proof that no written notice was given as required by the Act. The defendant employer in the instant case offered no such evidence. In view of the foregoing, it is unnecessary for us to consider the question of whether or not accident and resulting injuries to complainant arose out of and in the course of his employment.

It is next insisted by appellants that "The plaintiff Lee Marsh was a mere trespasser as to defendant Pikeville Fuel Company, to whom it owed no duty other than to refrain from willfully injuring him.

"(a)· Defendant's employees had no authority to invite to ride as a guest in defendant's vehicle. . . .

"(b) Defendant Pikeville Fuel Company owed no duty to plaintiff except to refrain from willfully injuring him. . . .

"Whatever negligence might be chargeable to defendant Logan Holland was the negligence of the plaintiff.

"(a) Lee Marsh was the representative of the defendant Pikeville Fuel Company through whom it was acting at the time of and in the very connection with the operation of the bus that was involved in this case. . . .

"(b) Logan Holland who was actually driving the bus at the time of the collision was under the direct supervision and control of plaintiff. . . ."

We are unable to follow the reasoning advanced in connection with the first proposition, that the plaintiff was a trespasser, or to find application for the authorities cited in support thereof, under any logical construction to be placed upon the evidence; but, as to the latter, we are in accord. We are of the opinion that the record clearly demonstrates that the plaintiff had full authority and control over the operation of the bus and over the driver, the defendant Holland, at and prior to the time of the accident. The Trial Judge, deeming the question a controverted issue of fact, presented it to the jury, thus,

"Now, if a person is riding in a vehicle over which he has control of its operation, although he may not be himself physically operating it, but if the driver is under his direction and control, why then it is a different situation from what it is if he be a guest. He would be, of course, chargeable under that sort of situation with the negligence of the driver; that would be imputable to him

and he couldn't, of course, have a cause of action when under such circumstances as the negligence of the driver is imputable to him.

"Now, the plaintiff insists that on this date in question, that is, on the 29th of March 1946, he was riding from a mine in this bus belonging to the defendant and operated by the defendant, Pikeville Fuel Company's employee, Logan Holland, and that he didn't have the direction and control of the vehicle or of the driver and that he was riding in the vehicle without any such rights and authority and that he himself was in the exercise of ordinary care for his own safety when this obstruction appeared in the road, as is charged in his declaration, and that the driver negligently was failing to keep a lookout ahead in driving his bus too fast; that there was nothing he could do about it and he himself was conducting himself as a person of ordinary care and prudence would do in a similar situation, and as a result of this driver's failure to keep a lookout ahead and his negligence and rate of speed under the circumstances he caused the truck to turn over and injure him, as he charges in his declaration, and that at the time the bus was being operated by this agent of the defendant on the defendant fuel corporation's business.

"Now, if these things appear to have been shown by the greater weight or preponderance of the evidence why then the plaintiff would be entitled to recovery for such amount as you think to be reasonable compensation under the rules I will presently outline to you.

"On the other hand, the defendant insists that, first, that they are guilty of no negligence in the premises that the driver, Holland, was guilty of no negligence in the operation of the automobile, that he kept such a lookout ahead and drove the automobile at such speed as a person

of ordinary care and prudence would have done under that situation and that Holland was guilty of no negligence.

"Well, if that be true or if the plaintiff has failed to show that by the greater weight or preponderance of the evidence, as I said to you, that he was negligent, then of course, the defendant would be entitled to a verdict of not guilty. The defendant further insists that this plaintiff himself was in charge of the operation of the bus and car and had control of it and control of Holland, if any, and they insist he was guilty of no negligence, but if he was guilty of any negligence which caused the accident, then that negligence is imputable to Marsh and Marsh's recovery because a negligent plaintiff, of course, can't recover on the theory a man can't benefit as a result of his own wrong. . . ."

However, as aforestated, we are unable to find wherein the evidence is in dispute on the issue submitted. The plaintiff admitted that he had control over the bus and over the operation thereof by the defendant Holland. He testified that at the curve some three or four hundred feet before they reached the Sam McReynolds place, although he "didn't pay no attention", the driver "evidently was making good time"; that, as they approached the parked car, the bus was being operated at a speed of "fifty or better". He was further asked, on cross-examination, "Did you say anything to Holland there about cutting down the speed or anything like that?" And answered, "No, I didn't". He was further asked, "Did you ever say anything to Holland about this driving?" And answered, "No, I had been asked to but I didn't." To the question, "Who had asked you", he answered, "some of the boys who was riding." It therefore appears that although the plaintiff was fully cog-

nizant of the reckless propensities of the driver of the bus as well as his manner of operation of the vehicle on the occasion in question, he not only took no precautions for his own safety, but allowed to go unheeded the requests of others for whose safety he was, at least to a degree, responsible.

██ We are of the opinion that, under such circumstances, a plaintiff cannot recover.

██ So far as we have been able to determine, there is here presented a rather novel question, in this State and as regards other jurisdictions for that matter,—that of the right of a person, other than the owner, being an employee of the owner and having control over the operation of an automobile, to recover against the owner and driver, a fellow servant, for the damages arising out of the latter's acts of negligence, committed in his presence, and where such plaintiff has previous knowledge of a negligent course of conduct on the part of driver. Being one of first impression, any determination thereof should reflect consistency with settled law in this State pertaining to related and analogous situations. First it must be recognized that if the employer had elected not to operate under the Workmen's Compensation Act, the defenses of contributory negligence, assumption of risk and the fellow servant doctrine are not available to him in a common law action brought by an employee. Code Section 6862; Duncan v. Dickie Rector Lumber Co., 31 Tenn. App. 155, 212 S. W. (2d) 908; Moore Coal Co. v. Brown, 166 Tenn. 516, 64 S. W. (2d) 3; Shoaf v. Fitzpatrick, 6 Cir., 104 F. (2d) 290. On the other hand, it must be conceded that one having control over the operation of a motor vehicle is equally liable with the driver for injuries negligently inflicted upon a third party. Blashfield's Encyclopedia of Automobile Law, Perm. Ed., Vol.

5, Sec. 3133; Wilson v. Mullen, 11 Tenn. App. 319; Burris v. Farrell Brothers, 14 Tenn. App. 121; Wilson v. Moudy, 22 Tenn. App. 356, 123 S. W. (2d) 828. Also, a guest cannot recover from his host where, being aware that the latter is a careless driver, and conscious of an impending danger due to the manner of operation of the vehicle, fails to give timely warning. Hatch v. Brinkley, 169 Tenn. 17, 80 S. W. (2d) 838; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111. Contributory negligence is imputable to a guest in an action against a third party, where the danger inherent in driver's conduct is obvious to him, and he fails to remonstrate with or warn the driver. Renfro v. Keen, 19 Tenn. App. 345, 89 S. W. (2d) 170; Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 187 S. W. (2d) 777. One engaged in a joint enterprise with another, and having common control and direction over an automobile and an opportunity to exercise same, will be precluded in an action against his joint entrepreneur. Chumley v. Anderton, 20 Tenn. App. 621, 103 S. W. (2d) 331; Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323; and where a joint adventure is established, the negligence of the driver will be imputed to the occupant in an action against a third party, where ". . . each is entitled to direct the other in the prosecution of the common enterprise." See Berryman v. Dilworth, 178 Tenn. 566, 160 S. W. (2d) 899, 902.

 It is clear, we think, that unless the rule which precludes the interposition of common law defenses is held to apply, the plaintiff could not recover under any theory of liability. But assuming its application, can a recovery be sustained? In our opinion, it cannot. We consider the circumstances of the instant case and the relationships involved to create an exception to the rule

not contemplated in the statutory preclusions. The plaintiff here was a "Vice-principal", one entrusted or deputized by the master to exercise supervision and control over other employees of the master, and for whose acts of negligence the latter is responsible. Words and Phrases, Perm. Ed., Vol. 44, p. 226 et seq. It would be anomalous to say that a person of this category, through whom and for whose acts negligence is imputable to the master, could recover from the latter on the basis thereof. Actually, it is not contributory negligence or assumption of risk with which we are here dealing. It is rather the failure on the part of the plaintiff to exercise a primary responsibility. As the alter ego of the master, a corporation which can only act through its human agencies, he cannot predicate an action upon his own omission;— benefit by his own wrong.

The judgment of the lower court will be set aside, a verdict here directed for the defendants, and the suit dismissed. The defendant-in-error will pay the costs of the appeal.

McAmis and Howard, JJ., concur.